UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ABDUL RAHIM HOWARD,

                   Movant,

     -against-

UNITED STATES OF AMERICA,

                Respondent.
-------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case Nos.    04-CR-942 (FB)
             10-CV-2775 (FB)
             11-CV-5208 (FB)
             13-CV-4207 (FB)

*Appearances:*
*For the Movant:*
ABDUL RAHIM HOWARD, *pro se*
#72346-053
MDC Brooklyn
P.O. Box 329002
Brooklyn, New York 11232

*For the Respondent*:
LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

       Abdul Rahim Howard is currently incarcerated pursuant to the Court's judgment sentencing him principally to 240 months' imprisonment on convictions for conspiracy to distribute narcotics, management of a drug-related premises and distribution of narcotics near a playground. The judgment was affirmed on appeal. *See United States v. Ramos*, 314 F. App'x 344 (2d Cir. Nov. 20, 2008). On August 16, 2012, the Court denied Howard's motion for relief under 28 U.S.C. § 2555 and, on December 13, 2012, denied his motion to reconsider the denial.

       Howard now requests three things. First, he asks the Court to adjudicate claims overlooked in the Court's August 16th order. Second, he asks the Court to vacate his convictions under the Supreme Court's recent decision in *Alleyne v. United States*, 133

S. Ct. 2151 (2013).  Third, he asks to be resentenced under retroactive amendments to the Sentencing Guidelines.

**I**

Howard first moved for relief under § 2255 on June 11, 2010.  The Court denied the motion, and Howard appealed.  While the appeal was pending, Howard filed a second § 2255 motion on October 21, 2011.  The Second Circuit concluded that the October 2011 motion was not a "second or successive" motion subject to the "preclearance" requirement of 28 U.S.C. § 2255(h), and instead remanded "for whatever further action the district court finds appropriate."  Mandate (Apr. 18, 2012) (internal quotation marks omitted).

On remand, the Court addressed the two claims raised in Howard's October 2011 motion, as well as an additional claim raised in a supplemental submission filed on April 25, 2012.  As noted, the Court entered an order rejecting those claims (and reaffirming its prior denial of the June 2010 motion) on August 16, 2012.

Unbeknownst to the Court, Howard had raised three additional claims in various submissions.[1]  Although he moved for reconsideration, he argued only that the Court had misconstrued the claims addressed in the August 16th order; he did not call the Court's attention to any overlooked claims.  As noted, the Court denied reconsideration on December 13, 2012.

---

[1]It appears that some of Howard's submissions were inadvertently docketed under the case number assigned to his June 2010 motion.

2

On December 31, 2012, Howard—with the informal assistance of counsel—asked the Court to "address [the] open issues by means of a formal decision." Letter from Mitchell A. Golub, Esq. (Dec. 31, 2012). He repeated the request *pro se* on May 6, 2013, and again on August 19, 2013.

Entry of a final judgment or order drastically limits a district court's authority. Rule 59(e) does, of course, empower a court to "alter or amend" its decision in response to a timely motion; however, it does not authorize successive motions. *See Glinka v. Maytag Corp.*, 90 F.3d 72, 74 (2d Cir. 1996) ("Allowing subsequent motions . . . would encourage frivolous motions and undermine a fundamental canon of our legal system, to promote the finality of judgments.").

Another possibility is Rule 60(b), which authorizes a court to modify a judgment for certain specified reasons. One such reason is "mistake," Fed. R. Civ. P. 60(b)(1), which the Second Circuit has long construed to include mistakes made by the court. *See Tarkington v. United States Lines Co.*, 222 F.2d 358, 360 (2d Cir. 1955). Thus, the Court's inadvertent failure to address all of Howard's claims can be remedied by treating his request as a motion for relief from judgment under Rule 60(b)(1).[2]

Each of the overlooked claims involves the Sixth Amendment right to the effective assistance of counsel. Thus, Howard must satisfy the familiar standards of

---

[2]"[A] motion for relief from . . . judicial mistakes under Rule 60(b)(1) may not be made after the time for appeal has elapsed." *International Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir. 1977). Howard brought the oversight to the Court's attention within 60 days of the order denying rehearing. *See* Fed. R. App. P. 4(a)(4)(A)(iv) (providing that time to appeal begins to run upon disposition of timely motion to alter or amend judgment).

3

*Strickland v. Washington*, 466 U.S. 668 (1984), "(1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." *United States v. Jones*, 482 F.3d 60, 76 (2d Cir. 2006) (citing *Strickland*, 466 U.S. at 668, 687). For the following reasons, the Court concludes that Howard cannot satisfy those standards.

## A. Prosecutorial Misconduct

Howard's first claim is that his trial and appellate counsel provided ineffective assistance by failing to raise a claim that the government presented perjured testimony to the grand jury.  According to Howard, an agent of the Drug Enforcement Administration told the grand jury that Howard was a manager of a New York drug operation as of October 2004.  At trial, by contrast, the same agent testified that a confidential informant had told him that Howard had moved to North Carolina in September of that year.

Claims of irregularities in grand jury proceedings are subject to harmless-error analysis. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988). "Under this standard, dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations. *See id.* at 256 (citation and internal quotation marks omitted); *see also Weichert v. United States*, 458 F. Supp. 2d 57, 62 n.2 (N.D.N.Y. 2006) (applying general rule to claim of perjury).[3]

---

[3]For certain violations not at issue here—most notably, racial discrimination in the selection of the grand jury—prejudice is presumed.  *See Bank of Nova Scotia*, 487 U.S. at 256-

The charges against Howard alleged that he was involved in the drug operation between April 2002 and November 2004.  Given the extensive testimony regarding his prolonged involvement with the operation, there is no reasonable probability that the grand jury's decision to indict hinged on his activities at the very end of that period.  The Court is particularly certain of that conclusion given that the petty jury — which heard the testimony that Howard had left the operation in September 2004 — nevertheless found him guilty.  *See United States v. Mechanik*, 475 U.S. 66, 73 (1986) ("[T]he petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation.").  "[F]ailure to make a meritless argument does not amount to ineffective assistance."  *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (citation and internal quotation marks omitted).

## B.  Speedy Trial

Howard next argues that his counsel was ineffective for failing to move to dismiss the indictment for a speedy trial violation.  He "estimates" that 160 non-excluded days elapsed between his initial arraignment and the start of trial.  The Court's own calculations, based on minute entries on the docket, reflect that 272 non-excluded days elapsed.  The Court suspects that many more days were excluded, but inadvertently omitted from the minute entries.  The transcripts of the various status conferences between arraignment and trial are not in the record, and would be difficult to obtain at this point.

---

57 (citing *Vasquez v. Hillery*, 474 U.S. 254 (1986)).

5

In any event, the only plausible outcome of a speedy trial challenge, had it been raised, would have been a dismissal without prejudice.  *See* 18 U.S.C. § 3162(a)(2) ("In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on . . . the administration of justice.")   That result does not constitute prejudice under *Strickland*.  *See Patiwana v. United States*, 928 F. Supp. 226, 241 (E.D.N.Y. 1996), *aff'd*, 173 F.3d 845 (2d Cir. 1999); *accord United States v. Rushin*, 642 F.3d 1299, 1309-10 (10th Cir. 2011) ("In no meaningful sense has Defendant established a reasonable probability that the result or outcome of the proceeding to which he was subjected would have differed if the indictment on which he stands convicted had been dismissed without prejudice." (internal quotation marks omitted)).[4]

## C.  Sufficiency of the Evidence on Count Four

Count Four of the Superseding Indicment charged Howard with drug distribution within 1000 feet of a playground, in violation of 21 U.S.C. § 860(a).  Howard argues that his counsel was ineffective for failing to challenge the sufficiency of the government's evidence (1) regarding the distance between the playground and the drug-

---

[4]The Supreme Court's holding that failure to make the requisite findings for a speedy trial exclusion is *per se* reversible error, *see Zedner v. United States*, 547 U.S. 489, 508 (2006), does not alter the analysis.  *Zedner* involved a speedy trial challenge raised on direct appeal, *see id.* at 496-97, and expressly noted that dismissal without prejudice was a possible remedy.  *See id.* 509 ("The sanction for a violation of the [Speedy Trial] Act is dismissal, but we leave it to the District Court to determine in the first instance whether dismissal should be with or without prejudice.").

distribution site, and (2) regarding the statutory definition of "playground."  *See id.* §
860(e)(1) ("The term 'playground' means any outdoor facility . . . containing three or more
separate apparatus intended for the recreation of children including, but not limited to,
sliding boards, swingsets, and teeterboards.").

"A reviewing court must indulge a strong presumption that counsel's
[performance] falls within the wide range of reasonably professional assistance." *United
States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004).  The presumption is particularly apt here.
Howard's focus on two elements of § 860(a) ignores another: distribution of drugs.  Other
charges under 21 U.S.C. § 841 rested on the same premise.  The minimum penalty for a
violation of § 860(a) is one year of imprisonment, "*[e]xcept to the extent a greater minimum
sentence is otherwise provided by section 841(b)*."  (emphasis added).

In other words, the driving force behind the prosecution was Howard's
involvement in a drug-distribution operation.  It was not unreasonable for counsel to
mount a defense denying that involvement altogether.  Adding arguments addressed to
statutory niceties would have risked the appearance of conceding Howard's involvement
with absolutely no countervailing effect on Howard's likely sentence.  In those
circumstances, the Court easily concludes that counsel's actions fell "within the wide range
of reasonably professional assistance."  *Gaskin*, 364 F.3d at 468.

## II

In June of this year, the Supreme Court held that "any fact that increases the
mandatory minimum is an 'element' that must be submitted to the jury," and overruled
its prior precedent to the contrary.  *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013)

(overruling *Harris v. United States*, 536 U.S. 545 (2002)).  One month later, Howard—who was sentenced to a mandatory minimum set forth in 21 U.S.C. § 841(b)—filed a § 2255 motion claiming that *Alleyne* requires that his convictions and sentence be vacated.[5]

In *United States v. Redd*, ____ F.3d ____, 2013 WL 5911428 (2d Cir. Nov. 5, 2013), the Second Circuit held that "*Alleyne* did not announce a new rule of law made retroactive on collateral review."  *Id.* at ____, 2013 WL 5911428, at *3.  Therefore, it is not a ground for relief under § 2255.

### III

In 2010, Congress enacted the Fair Sentencing Act ("FSA"), which amended 21 U.S.C. § 841(b) to increase the amount of crack cocaine necessary to trigger the statute's mandatory minimum sentences.  *See* Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010), § 2 (amending 21 U.S.C. §§ 841(b)(1)(A)(iii), 841(b)(1)(B)(iii)).  It further directed the U.S. Sentencing Commission to amend the base offense levels for Guideline § 2D1.1 to comport with the statutory changes.  *See id.* § 8.  The Commission responded by promulgating Amendment 750.

---

[5]Like his October 2011 motion, Howard's July 2013 motion is not subject to the "preclearance" requirement of § 2255(h).  In the former case, the pendency of an appeal made the requirement inapplicable.  *See Whab v. United States*, 408 F.3d 116, 118 (2d Cir. 2005) ("[S]o long as appellate proceedings following the district court's dismissal of the initial petition remain pending when a subsequent petition is filed, the subsequent petition does not come within [§ 2255(h)'s] gatekeeping provisions for 'second or successive' petitions.").  In the latter case, the Court had not yet completely disposed of all claims when the July 2013 motion was filed.  *See Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002) ("[I]n general, when a § 2255 motion is filed before adjudication of an initial § 2255 motion is complete, the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion.").

8

The guideline amendment took effect on November 1, 2011, but was explicitly made retroactive pursuant to the Commission's authority under 28 U.S.C. § 994(u). By contrast, the statutory amendment is not retroactive. *See United States v. Diaz*, 627 F.3d 930, 931 (2d Cir. 2010) ("[T]he FSA contains no express statement that it is intended to have retroactive effect nor can we infer such intent from its language."). In *Diaz*, the Second Circuit held that the statutory amendment "could not operate to reduce Appellant's sentence, since he was convicted and sentenced before the FSA was signed into law." *Id.*

Howard has twice moved to be resentenced under Amendment 750, and the Court has twice denied that request on the ground that Howard's sentence was based on the statutory mandatory minimum, not the Guidelines. By way of motion for reconsideration, Howard argues that not applying the statutory amendment retroactively constitutes intentional race discrimination in violation of the equal protection principles. His argument is based on *United States v. Blewett*, 719 F.3d 482 (6th Cir. 2013), in which a panel of the Sixth Circuit held that "the intentional maintenance of [racially] discriminatory sentences is a denial of equal protection." *Id.* at 489. However, the panel opinion has been vacated pending *en banc* review. *See United States v. Blewett*, Case Nos. 12–5226, 12–5582 (6th Cir. order dated July 11, 2013). In any event, the Second Circuit held in *United States v. Williams*, 347 F. App'x 710 (2d Cir. 2009), that the pre-amendment mandatory minimums for crack cocaine did not violate equal protection. *See id.* at 711. There is simply no reason to believe that Congress decided not to give those already sentenced the benefit of amendment based on the racial composition of that group. *Accord United States v. Bigesby*, 685 F.3d 1060, 1066 (D.C. Cir. 2012) ("[A]ny [equal protection] concerns are resolved by

9

Congress' rational basis for limiting the [amendment's] retroactive effect — its interest in the finality of sentences."  (citation and internal quotation marks omitted))."

## IV

All of Howard's pending motions are denied.  Because he has not made a substantial showing of a denial of his constitutional rights, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253.  The Clerk is directed to docket this memorandum and order in each of the cases listed in the caption.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 25, 2013